[No. 18788.   Department One.   November 14, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v. GUIDO GROSSI, *Appellant*.[1]

HOMICIDE (127) — CRIMINAL LAW (356) — NEW TRIAL — NEWLY DISCOVERED EVIDENCE. Upon a conviction of first degree murder, a new trial should not be granted for newly discovered evidence, upon the issue as to insanity and lack of motive, fully gone into at the trial, where the gist of the new evidence, similar to that already received, was known to his counsel and referred to by witnesses, and full opportunity accorded to produce the details relied on, which would probably not have changed the result.

Appeal from a judgment of the superior court for Grays Harbor county, Hewen, J., entered December 15, 1923, upon a trial and conviction of murder. Affirmed.

*J. M. Phillips* and *Jozef Zelasko,* for appellant.

*A. E. Graham,* for respondent.

TOLMAN, J.—Appellant was tried and convicted upon the charge of murder in the first degree, the jury fixing the death penalty. The defense was a plea of not guilty by reason of insanity and mental irresponsibility still existing. The victim of the crime, as charged in the information, was one Giuseppe Tolomei, but the evidence in the case tends to show that, at the same time, the defendant also killed one John Ricci, and one Joe Vagrig, and severely wounded one Carlo Pelligrini. The details of the evidence, which need not be here given, fail to show with any clearness a reasonable motive for the killing, and in the course of the trial it was brought out, first by the state, and later by the defense on cross-examination of the state's witnesses, and then by direct testimony to the same effect in the

[1]Reported in 230 Pac. 164.

defense in chief, that the appellant had, without any apparent reason, shot and wounded two men about a week previously in a not distant part of the same city. Apparently the defense was permitted to introduce all of the testimony that it then had or sought to offer touching the previous shooting, the purpose unquestionably being to show that the appellant was insane and irresponsible, and that, by reason of his mental condition, this shooting was done without motive or purpose in such a way and manner as to indicate a diseased and unbalanced mind.

In due course, after the verdict was rendered, which was on December 13, 1923, a motion for a new trial was interposed, naming the usual statutory grounds, among them being: "Newly discovered evidence material for the defendant which he could not have discovered with reasonable diligence and produced at the trial," supported by an affidavit of one of appellant's counsel, which says:

"That on the night of December 14th I talked with R. Smith, who was shot on the night of November 4th by the defendant, and he told me that the defendant came to his door at 409 South M Street, Aberdeen, and went from the door to the window and peeked in the window; that he then went to the door and tried to open the door. That the door was locked and he, the said Smith, went to the door and opened the door and asked the defendant to come in. That he did not come in but walked back to the street. That Smith shut the door and left the defendant outside but watched him through the window. That the defendant started to crawl into the automobile at the front of the house. That he went out again and put him out of the automobile and went back to the house. That the defendant stood on the sidewalk for a while and went back and got into the automobile again. That he the said Smith and his brother-in-law went back outside and put the defendant out of the automobile a second time, and

told him to get away from the house. That he started walking up the street and that he went back toward the house, and as they were entering the house the defendant fired six shots at them, three shots taking effect, two striking Smith, and the other, the brother-in-law. That one shot grazed the stomach of Smith and the other went through his arm. That the brother-in-law was shot through the leg. That after the defendant stopped shooting he walked leisurely up the street away from the house and turned into Hume Street and walked past the A. A. Star Transfer Building to about a block and went to bed."

No reason is stated in the affidavit, nor anywhere suggested in the record, why all of this supposed newly discovered evidence could not have been obtained prior to or during the course of the trial, so that the man Smith referred to in the affidavit could have been produced as a witness for the defense. Even if we assume that the appellant was so far insane as to have been incapable of communicating to his attorney the facts with reference to this affair, still, at an early stage of the trial, which lasted for a number of days, the matter of this previous shooting had been referred to and interjected by a witness for the state, so that clearly there was plenty of oportunity for investigation, and for the subpoenaing of Mr. Smith if his testimony were considered important.

Other matters are referred to in the affidavits supporting the motion for a new trial, but these are likewise matters of which counsel had knowledge at the time sufficiently early to permit of the introduction of all material evidence with reference thereto. These are apparently the only matters which were relied upon in the argument upon the motion for a new trial, and are the only matters argued and presented here as a reason why the trial court erred in refusing to grant a new trial.

We have laboriously searched the statement of facts, traced out all of the evidence relating to the matters indicated, and cannot find that the appellant was at any time denied an opportunity to go into these questions fully and properly present them to the jury.

In a case where the death penalty is to be inflicted, we feel peculiarly our heavy responsibility, and in this case have spared no effort or pains in making certain that appellant was accorded his full rights in presenting his defense. As to that defense, it was clearly a question for the jury. The jury was properly instructed as to the defense of insanity, and had the jury found the defendant insane, we should have been bound to uphold that verdict. The matters set forth in the affidavit in support of the motion for a new trial, which we have quoted, seem to us no more to indicate a lack of sanity than the details produced in evidence relating to the crime which appellant was directly charged with committing and of which he was found guilty. Both were of the same general nature, and while the full details of the first shooting as set up in the affidavit were not before the jury, the gist of the matter and the apparent lack of motive for that shooting was brought before the jury by the testimony of a number of witnesses. We cannot conceive of a different result being reached by the jury had the testimony of the Mr. Smith referred to in the affidavit been produced.

"The affidavits submitted in support of this motion fail to show that the evidence sought to be produced is in law newly discovered; that is, that appellant or his counsel could not have, by reasonable diligence, discovered it before the trial. Besides, it seems to us, as it evidently did to the trial court, that the alleged newly discovered evidence would not be likely to change the result upon a new trial. We think the court did

not err in denying the motion." *State v. Blackwood,* 103 Wash. 529, 175 Pac. 168.

The question of sanity or insanity was one of fact. The jury heard and saw the witnesses; it was their province to decide the issue and fix the penalty, and the only appeal from their decision which can be entertained is an appeal to executive clemency.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and PARKER, JJ., concur.